■ In the Matter of HARPER MANAGEMENT COMPANY, Respondent, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Appellant and 245 EAST 19TH STREET TENANT ASSOCIATION, Intervenor-Appellant. — Judgment, Supreme Court, New York County (Ascione, J.), entered August 9, 1983, granting a petition to compel the Conciliation and Appeals Board (CAB) to process petitioner's application for comparative hardship rent increases using a formula which was repealed by statutory amendment in 1975, unanimously modified, on the law, without costs or disbursements, to grant the petition only to the extent of remanding the matter to respondent-appellant or its successor for a determination of petitioner's application under the new law, with a direction that any rent increase be made retroactive to June 12, 1975 and, except as thus modified, affirmed.

On April 25, 1975, petitioner, the owner of a rent-stabilized building at 245 East 19th Street in New York City, submitted an application for rental increases based upon the existing comparative hardship formula as set forth in the then-existing statute (Administrative Code of City of New York [Code], § YY51-6.0, subd c, par [6]), which provided for increases to be determined pursuant to a formula based upon the ratio between the prevailing operating expenses and gross rents over a five-year test period. Unhappy with the formula, respondent CAB had been studying the issue since as early as October of 1974, and had determined to recommend that the existing Code provision be reinterpreted to provide for increases "based upon a dollar for dollar cash flow as opposed to a ratio system." The

effect of such change would be to lower the rental increases to which an owner would be entitled by limiting the increases to a pass-along of actual increased expenses. The CAB had also decided, on April 17, 1975, to call upon the State Legislature to clarify the statute in regard to the comparative hardship provisions. Apparently, no hardship applications were being processed while the CAB contemplated a "reinterpretation" of the statute, and the backlog of pending cases rose to 129. After the withdrawal of 27 other applications, petitioner's became the 103rd on the list. Since petitioner's application complied with the requirements then in effect it was given a docket number and, by May 12, 1975, service was completed upon the tenants and a certificate attesting to that fact submitted by petitioner to the CAB. Meanwhile, the CAB decided to implement its "reinterpretation" of the statute. Thus, on May 23, 1975, the CAB informed petitioner that additional information was required to process the application, not under the existing Administrative Code provision, but under the CAB's reinterpretation. Petitioner refused. On July 2, 1975, chapter 392 of the Laws of 1975, which instituted a new formula requiring a comparison of a three-year base period (generally 1968-1970) to a three-year current period, became effective. The new statutory provision was intended to permit owners to maintain the same average net income which prevailed in the base period, in contrast to the same ratio of gross rents to expenses as was the case under the old law. (See Administrative Code, § YY51-6.0, subd c, par 6, as amd by L 1975, ch 392.)

The new law was held to be applicable to all pending applications except in those cases where the CAB had deliberately or negligently delayed the processing of the application pending the contemplated change in the law. (*Matter of Vanderbilt 77th Assoc. v Conciliation & Appeals Bd.,* 51 AD2d 946, mot for lv to app den 39 NY2d 707.) The CAB subsequently decided, and the Chairman of the Board of the Rent Stabilization Association was so advised, that the old law would be applied to pending hardship applications in which the filing had been completed four months prior to the change in the law, provided there had been no waiver of the owner's rights. Since petitioner had completed the filing of its application on May 12, 1975, only one and one-half months prior to the change in the law, and had failed to update its documentation to conform to the amended statute, the CAB, on June 9, 1977, dismissed its application. Petitioner then commenced this CPLR article 78 proceeding to compel the CAB to process its application according to the law as it existed prior to July 2, 1975.

Finding a factual issue as to whether the CAB had willfully and deliberately delayed the processing of petitioner's application, Special Term (Helman, J.), directed a hearing on that issue, as well as the further question of whether any such delay prejudiced petitioner. The matter was thereafter submitted upon an agreed statement of facts to the referee, who found willful and deliberate delay in the processing of petitioner's application but made no finding as to prejudice. Special Term (Ascione, J.) thereafter confirmed the referee's report and remanded the matter to the CAB with a direction to process petitioner's application in accordance with the law in effect at the time of filing. This was error and we modify to amend the remand to direct the CAB to determine petitioner's application in accordance with the new law.

The issue of delay must be determined on a case-by-case basis. (*Matter of Park West Vil. Tenants' Assn. v New York City Conciliation & Appeals Bd.,* 73 AD2d 515, 515-516, Fein, J., concurring.) The stipulated facts show that petitioner's application was completed for filing on May 12, 1975, only six weeks before the new law took effect on July 2, 1975. As part of its submission to the referee, the CAB presented a detailed breakdown of the procedures which must be followed in processing such an application and the minimum time required for each procedure. This breakdown showed the minimum processing time to be four months, exclusive of any complications or adjournments. Such a schedule seems to us to be reasonable. Thus, even assuming, *arguendo,* as petitioner contends, that the CAB had stockpiled the 102 applications which had priority over its own, the CAB, had it ignored these other applications and processed petitioner's immediately, could not possibly have completed petitioner's application before September 12, 1975, more than two months after the new law took effect. Thus, any delay on CAB's part could not have prejudiced petitioner. Its application, filed only six weeks before the new law took effect, could not reasonably have been processed to completion prior to the effective date of the new law. Since petitioner's application complied with the then-existing law, and it never waived its right to an increase as of the date of the completion of its filing, its entitlement to any increase under the new law shall, in accordance with its provisions, be effective June 12, 1975, the date one month after the day on which it completed the filing of its application. Concur — Kupferman, J. P., Sullivan, Ross, Carro and Alexander, JJ.